## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAIʻI

REBECCA WEST,

       Plaintiff,

vs.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

       Defendant.

Case No. 18-cv-00092-DKW-RT

**ORDER REVERSING DECISION OF ACTING COMMISSIONER OF SOCIAL SECURITY AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

On March 13, 2018, Plaintiff Rebecca West appealed the Acting Commissioner of Social Security's denial of her applications for disability insurance benefits and supplemental security income. In her Opening Brief, West asks this Court to review (1) whether the Administrative Law Judge's (ALJ) failure to identify skills West obtained from prior work constitutes reversible error, and (2) whether the ALJ's decision was supported by substantial evidence. After carefully reviewing the record and the arguments of counsel in their briefs and during oral argument, the Court concludes that this case must be remanded for further administrative proceedings as set forth below.

# BACKGROUND

## I.  Review of Disability Claims

A five-step process exists for evaluating whether a person is disabled under the Social Security Act (SSA).   20 C.F.R. § 404.1520; 20 C.F.R § 416.920.   First, the claimant must demonstrate that she is not currently involved in any substantial, gainful activity.   *Id*. §§ 404.1520(a)(4)(i), (b); §§ 416.920(a)(4)(i), (b).   Second, the claimant must show a medically severe impairment or combination of impairments that significantly limit her physical or mental ability to do basic work activities.   *Id*. §§ 404.1520(a)(4)(ii), (c); §§ 416.920(a)(4)(ii), (c)   Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled.   *Id*. §§ 404.1520(a)(4)(iii), (d); §§ 416.920(a)(4)(iii), (d).

If the claimant's impairment does not match or is not equivalent to an established listing, the Commissioner makes a finding about the claimant's residual functional capacity (RFC) to perform work.   *Id*. § 404.1520(e); § 416.920(e).   The evaluation then proceeds to a fourth step, which requires the claimant to show her impairment, in light of the RFC, prevents her from performing work she performed in the past.   *Id*. §§ 404.1520(a)(4)(iv), (e), (f); §§ 416.920(a)(4)(iv), (e), (f).   If the claimant is able to perform her previous work, she is not disabled.   *Id*. § 404.1520(f); § 416.920(f).   If the claimant cannot perform her past work, though,

the evaluation proceeds to a fifth step.  *Id*. §§ 404.1520(a)(4)(v), (g);

§§ 416.920(a)(4)(v), (g).   At this final step, the Commissioner must demonstrate

that (1) based upon the claimant's RFC, age, education, and work experience, the

claimant can perform other work, and (2) such work is available in significant

numbers in the national economy.  *Id*. § 404.1560(c); § 416.960(c); *Tackett v.*

*Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (explaining that, at Step Five, the burden

moves to the Commissioner).   If the Commissioner fails to meet this burden, the

claimant is deemed disabled.   20 C.F.R. § 404.1520(g)(1); § 416.920(g)(1).

## II.    The ALJ's Decision

On November 16, 2016, the ALJ issued a decision finding West "not

disabled" under the SSA.   Administrative Record ("AR") at 33.   At Step One of

the evaluation process, the ALJ determined that West had not engaged in substantial

gainful activity since the alleged onset date of April 1, 2007.  *Id*. at 24.   At Step

Two, the ALJ determined that West had the following severe impairments: left

shoulder rotator cuff tear and adhesive capsulitis; osteoporosis and degenerative disc

disease in the lumbar spine and hips with left hip sacroiliitis; and minor motor

seizures.  *Id*. at 25-27.   At Step Three, the ALJ determined that West did not have

an impairment or combination of impairments that met or medically equaled the

severity of one of the impairments listed in the governing regulations.  *Id*. at 28.

Before reaching Step Four, the ALJ determined that West had the following

RFC:

> she can lift and/or carry 20 pounds occasionally and 10 pounds
> frequently, stand and/or walk 6 hours in an 8-hour period, and sit 6
> hours in an 8-hour period (i.e., light exertional-level work as defined in
> [the governing regulations]); she can occasionally push and/or pull
> with her left upper extremity; she can occasionally climb ramps and
> stairs (but never climb ladders, ropes, or scaffolds); she can frequently
> balance; she can occasionally stoop, kneel, and crouch; she can never
> crawl[;] and[,] she must avoid all exposures to hazardous machinery
> and unprotected heights.

*Id*. at 28-30.

At Step Four, the ALJ determined that West was unable to perform any past

relevant work. *Id*. at 30. In doing so, the ALJ identified respiratory therapist and

emergency medical technician as skilled work West had performed in the past. *Id*.

At Step Five, the ALJ determined that jobs existed in significant numbers in the

national economy that West could perform. *Id*. at 31-32. More specifically, a

vocational expert stated that, in light of West's RFC, age, education, and work

experience, she would be able to perform the skilled job of cardiac monitor

technician and the semi-skilled jobs of phlebotomist and first aid attendant. *Id*.

This final determination resulted in the ALJ finding that West was not disabled

under the SSA at any time from April 1, 2007 through November 16, 2016, the date

of the decision. *Id*. at 32.

### III.  The Appeals Council's Decision

The Appeals Council granted various requests from West for more time before acting on her case.  *Id*. at 10, 13.  Thereafter, West submitted for the Appeals Council's review medical records from the State of Hawaii Department of Human Services dated July 11, 2014 through July 14, 2016, containing four physical examination reports.  *Id*. at 2, 40-57.

On September 7, 2017, the Appeals Council denied West's request for review of the ALJ's decision.  *Id*. at 1.  With respect to the medical records from the State of Hawaii, the Appeals Council found that "this evidence does not show a reasonable probability that it would change the outcome of the decision."  *Id*. at 2. At the same time, the Appeals Council stated that it "did not consider and exhibit this evidence."  *Id*.

### IV.  This Action

In her Opening Brief, Dkt. No. 18, West makes two principal arguments. First, she asserts that the ALJ legally erred in failing to specifically identify the skills that could transfer from her prior work to the work the ALJ found she could do. Second, she contends that the ALJ's decision was not supported by substantial evidence, including evidence the ALJ purportedly ignored and evidence submitted to the Appeals Council.  Because the latter argument speaks to the propriety of the RFC in this case, the Court will address it first below.

## STANDARD OF REVIEW

A court must uphold an ALJ's decision "unless it is based on legal error or is not supported by substantial evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Id.* (quotation omitted). Stated differently, "[s]ubstantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (quotation omitted). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Id.* at 679; *see also Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.") (citations omitted).

In addition, a court may not reverse an ALJ's decision on account of an error that is harmless. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted). In making this assessment, the Court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Id.* at 1115.

# DISCUSSION

## I.  Substantial Evidence

In her Opening Brief, West argues that the ALJ's decision is not supported by substantial evidence.[1]  Although the specific bases for this argument are, at times, hard to discern, it appears that West believes that substantial evidence is lacking because the ALJ purportedly failed to consider an opinion of Dr. Marko Reumann and because of the opinions expressed by Dr. Walter Wang in the medical records submitted to the Appeals Council.  *See* Dkt. No. 18 at 23 (asking for remand of this case for consideration of Dr. Wang's opinions and Dr. Reumann's opinion).[2]  West also appears to contend that the opinions of Dr. Joshua Green and treating nurse Marian Kehl ("Nurse Kehl") are not evidence supporting the ALJ's decision.

As for Dr. Green, the pertinent evidence is a note from Dr. Green, who appears to have treated West in an emergency room on June 16, 2014, indicating that

---

[1]More accurately, West argues that "the ALJ's decision was *against the substantial evidence* in the record."  Dkt. No. 18 at 15 (emphasis added).  That, however, improperly frames the issue.  The test on judicial review of an ALJ's decision is not whether substantial evidence exists *against* the decision, but, rather, whether substantial evidence *supports* the decision.  *See Ryan*, 528 F.3d at 1198.

[2]The grounds for West's substantial evidence argument are not always clear because she also mentions other purported faults with the ALJ's findings.  For example, West asserts, in one sentence and without further explanation, that the ALJ's decision is not supported by her testimony.  Dkt. No. 18 at 22.  In her Reply Brief, West attempts to characterize this one sentence, conclusory statement as an explanation of how the ALJ's decision is not supported by substantial evidence.  *See* Dkt. No. 20 at 14.  In her Reply Brief, West further contends that an ALJ can only reject a claimant's testimony with specific and clear reasons, but then fails to provide any explanation as to how the ALJ erred in that regard in this case.  The Court declines to guess and rejects any argument, to the extent one can be inferred from West's briefs, that the ALJ erred in considering West's testimony.

West could return to work two days later with no restrictions.   AR at 437.   The ALJ

gave this note "great weight" because it had support in the medical evidence.   *Id.*

at 30.   The ALJ cited to none of the evidence in the record, though, that purportedly

provided support for this note, *see id.*, and the Court cannot discern any.   Notably,

Dr. N. Shibuya, to whom the ALJ also gave "great weight" and upon whom the

Acting Commissioner concedes the ALJ principally relied, *see id.*, Dkt. No. 19 at 17,

opined that West had multiple restrictions on her work, *see* AR at 30.[3]   Thus, to the

extent Dr. Green's note is meant to provide evidence in support of the ALJ's RFC

determination, the Court finds that it does not.

As for Nurse Kehl, the ALJ found that her opinions were entitled to "little

weight."   *Id.*   West appears to contend the reasons the ALJ gave for doing so were

erroneous.   West is mistaken.   The ALJ found that West had only gone to Nurse

Kehl for a month, Nurse Kehl did not have a longitudinal relationship with West,

Nurse Kehl was not an acceptable medical source, and Nurse Kehl's opinions

(except in a few respects) were not supported in the medical record.   *Id.*   Although

West does not specifically argue how the ALJ erred, she contends that the ALJ gave

great weight to doctors who either saw her only once or did not treat her at all.   West

ignores, however, that the ALJ did not give those doctors great weight *because* they

---

[3]The reason Dr. Green's note is, arguably, not consistent with Dr. Shibuya's opinions is simple: in treating West during the course of a single emergency room visit, Dr. Green was not attempting to opine as to West's functional limitations for purposes of an RFC, as was Dr. Shibuya.

saw West on only one occasion or not at all.   The ALJ's statements that Nurse Kehl had only seen West for a month and did not have a longitudinal relationship with her simply provided context to the ALJ's earlier statement that Nurse Kehl was a "treating" nurse.   *See* 20 C.F.R. § 404.1527(a)(2) (providing that, for claims filed before March 27, 2017, a treating source is an acceptable medical source who has had an "ongoing treatment relationship" with the claimant).   West further contends that the ALJ did not consider regulations that may result in a nurse's opinion being given more weight than a treating physician.   West, though, entirely fails to explain how the ALJ erred in this fashion.   *See* Dkt. No. 18 at 18-19.   West's Reply Brief is of little further assistance, as she merely flatly asserts that Nurse Kehl's opinions were supported, explained, and consistent with another doctor.   *See* Dkt. No. 20 at 13-14.[4]   Finally, West contends that the ALJ did not elaborate on how Nurse Kehl's opinions were not supported by the medical record.   West ignores, however, that the ALJ did precisely that in laying out the medical evidence in the preceding pages of the decision.   Nowhere in that summary of the medical evidence is there *any*

---

[4]Having reviewed Nurse Kehl's medical source statement, AR at 868-874, her opinions are neither supported nor explained.   For example, after opining that West could only walk, stand, and sit, respectively, for one hour per work day, Nurse Kehl referenced only unidentified x-rays and MRIs, while providing no explanation for why or how those unidentified records supported her opinions.   *See* AR at 870.   The Court also disagrees that Nurse Kehl's opinions are consistent with Dr. Wang's.   Notably, Nurse Kehl opined that West could only sit for one hour in an eight-hour work day.   *Id*.   Dr. Wang, however, opined on four occasions that West could sit for six hours or less during an eight-hour work day, declining to check the box (on each occasion) that would indicate Dr. Wang thought West could not sit continuously for two hours.   AR at 44, 49, 53, 57.   In addition, unlike Nurse Kehl, Dr. Wang never checked the box that an assistive device was needed for West to walk.   *Compare id*., *with id*. at 870.

support for the opinions of Nurse Kehl, and West does not contend otherwise.[5]   As a result, the Court does not find that the ALJ erred in giving Nurse Kehl's opinions (except in the few instances delineated in the decision) little weight.

As for Dr. Reumann, the Court agrees with the Acting Commissioner's argument in opposition.   *See* Dkt. No. 19 at 19-20.   More specifically, contrary to West's contention, Dr. Reumann did not opine that she was "physically and mentally incapable the way she is feeling."   Rather, as the Acting Commissioner contends, that cherry-picked language comes from a treatment note in which Dr. Reumann is describing West's *subjective* complaints–*i.e.*, West feels physically and mentally incapable–*not* the doctor's opinion that West is physically and mentally incapable.   *See* AR at 828.   As such, the ALJ in this case did not fail to consider an opinion of Dr. Reumann because the statement upon which West relies was not the doctor's opinion.   This case, thus, need not be remanded for the ALJ to consider Dr. Reumann's non-opinion.

The opinions of Dr. Wang that were submitted as additional evidence to the Appeals Council are an entirely different matter.   As both parties frame the issue, this Court should consider Dr. Wang's opinions in determining whether substantial evidence supported the ALJ's decision.   Dkt. No. 18 at 21; Dkt. No. 19 at 20.   They

---

[5]To the extent West asserts that Dr. Wang's opinions support Nurse Kehl, as discussed in the preceding footnote, the Court disagrees.

both assert the Court should do so because Dr. Wang's opinions were submitted to the Appeals Council. This Court, however, does not see the issue quite the same.

This is because, contrary to the parties' contentions, the Appeals Council did not "consider" Dr. Wang's opinions. As the parties should be aware, "consider" is a term of art in the context of the submission of additional evidence to the Appeals Council. This is due to the pertinent regulation governing the Appeals Council's review of cases, which is Section 404.970 of Title 20 of the Code of Federal Regulations ("Section 404.970").

Prior to January 17, 2017, Section 404.970 required the Appeals Council to "consider" additional evidence provided that the evidence was new, material, and related to the period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b) (2016). If the additional evidence met those requirements, then the Appeals Council was required to consider it in determining whether to review a case. *Id.*[6]

When the Appeals Council fails to consider additional evidence that satisfies the requirements of Section 404.970(b), remand to the ALJ is appropriate. *Taylor*

---

[6]One question that may spring from the foregoing is: how did the Appeals Council determine whether additional evidence was new, material, and related to the period before the ALJ's decision, if the Appeals Council could not *consider* such evidence before making those determinations? The answer is straightforward. Another term of art exists in this context: the Appeals Council would "look at" additional evidence to determine whether it was new, material, and related to the period before the ALJ's decision, and, if the evidence was all of those things, the Appeals Council would then "consider" whether it justified reviewing a case.

*v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1233 (9th Cir. 2011).  In *Taylor*,

additional evidence was submitted to the Appeals Council that was lost and never

considered by the Council in denying a request for review.  *Id*. at 1232-33.  The

Ninth Circuit reviewed this evidence, found that it should have been considered

pursuant to Section 404.970(b), and remanded to the ALJ to reconsider its decision

in light of the additional evidence.  *Id*. at 1233.

Following *Taylor*, Section 404.970 was substantially amended.  Effective as

of January 17, 2017, Section 404.970(b) now provides that the Appeals Council will

only "consider" additional evidence if a claimant shows good cause for not

submitting the evidence up to five days before the hearing with an ALJ.  20 C.F.R.

§ 404.970(b) (2019).  Pursuant to Section 404.970(a), if good cause is shown, the

Appeals Council will then determine whether to review a case on the basis of

additional evidence if such evidence is new, material, relates to the period on or

before the hearing decision, and provides a reasonable probability that the outcome

of the hearing decision would change.  *Id*. § 404.970(a).  In other words, according

to the plain language of Section 404.970, *inter alia*, (1) additional evidence will not

be considered if a claimant fails to show good cause for not timely submitting it, (2)

if good cause is shown, additional evidence will be considered, and (3) the Appeals

Council will consider additional evidence for which good cause is shown in

determining whether to review a case on the basis of additional evidence.

With that regulatory overlay in mind, the Court turns to the Appeals Council's decision in this case. Because it is brief, yet important, the Court recites the Council's decision, as it pertains to the additional evidence from Dr. Wang, in full:

> You [West] submitted medical records from the State of Hawaii, Department of [ ] Human Services dated July 11, 2014 through July 14, 2016 (18 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not consider and exhibit this evidence.

AR at 2.

Because it is also important, the Court notes that, prior to the Appeals Council's denial of review, the Appeals Council sent West a letter, informing West that the Appeals Council would be changing the rules it applies when considering whether to review a case. *Id.* at 8-9. In essence, the letter informed West of the changes made to Section 404.970 that became effective at the start of 2017, as West's request for review before the Appeals Council was pending when Section 404.970 changed. The letter provided that, because West's case was pending before the changes to Section 404.970 became effective, the Appeals Council would find that West had shown good cause for not submitting additional evidence earlier. *Id.* at 9. The letter also provided that West would still need to show that any additional evidence was new, material, related to the period at issue, and had a reasonable probability of changing the outcome of the ALJ's decision. *Id.*

In light of this record and the pertinent regulatory overlay, the Court cannot find that the Appeals Council *considered* the additional evidence of Dr. Wang's opinions, as Section 404.970 envisions. Section 404.970(b) requires the Appeals Council to consider additional evidence if good cause is shown, and, here, the Appeals Council found good cause for the failure to submit Dr. Wang's opinions earlier. Therefore, the Appeals Council was required to *consider* Dr. Wang's opinions. The Appeals Council's decision, however, is clear in one respect: "We did not consider and exhibit this evidence." In a vacuum, those words could not be clearer. Doubt is arguably created, however, by the preceding sentence in the Council's decision: "We find this evidence does not show a reasonable probability that it would change the outcome of the decision." It would seem difficult to reach such a conclusion without considering or looking at–*in some fashion*–Dr. Wang's opinions. In light of the clarity of the Appeals Council's statement that it did *not* consider Dr. Wang's opinions, though, this Court can only speculate about what the Appeals Council meant in stating that Dr. Wang's opinions would not change the outcome of the case. Obviously, if the Appeals Council did not consider those opinions in any fashion, then the opinions would not make it reasonably probable that the outcome of the case would change. Nothing, after all, is nothing. It is, perhaps, more likely that the Appeals Council *looked at* Dr. Wang's opinions, determined that they would likely not change the outcome of this case, and then

stated, in boilerplate fashion, that the opinions had not been considered.   If that is what occurred here, then it is an error of the Appeals Council's own making, given that Section 404.970 is binding on the Acting Commissioner.   *See Carillo-Years v. Astrue*, 671 F.3d 731, 735 (9th Cir. 2011) ("the Code of Federal Regulations is clearly binding upon the Commissioner.") (quotation and alteration omitted).   The Acting Commissioner is also aware of terms of art in its own regulations, and, in the context of Section 404.970, *looking at* additional evidence is not the same thing as *considering* it.   If they were the same, then the Appeals Council would consider all evidence submitted to it, but, that is not what takes place.   Pursuant to Section 404.970(b), the Appeals Council *looks at* additional evidence to determine whether it should be considered, and, pursuant to Section 404.970(a), the Appeals Council *considers* additional evidence to determine whether a case should be reviewed.   To the extent the Appeals Council has conflated the requirements for reviewing a case with the requirement for when additional evidence will be considered, again, that is an error of the Appeals Council's own making.   Moreover, it is an error that this Court is not willing to ignore in the possible interest of expediency, especially where, as here, the Court must speculate in order to discern whether and/or to what extent the Appeals Council assessed Dr. Wang's opinions.

In summary, when the Appeals Council found that West had shown good cause for failing to submit additional evidence earlier, pursuant to Section

404.970(b), the Council was required to consider Dr. Wang's opinions. The

Appeals Council, though, "did not consider … this evidence." Therefore, pursuant

to *Taylor*, because "the Appeals Council was required to consider [Dr. Wang's

opinions], but failed to do so, remand to the ALJ is appropriate, so that the ALJ can

reconsider its decision in light of th[is] additional evidence."[7]

## II.  <u>Skills Identification</u>

West argues that the ALJ erred at Step 5 of the five-step sequential evaluation

process when the ALJ failed to identify the transferable skills she could perform

while finding that she could still perform some skilled or semi-skilled jobs. In light

of this Court's decision to remand this case to the ALJ, the ALJ's actions in this

---

[7]The Court notes that the Appeals Council also stated that Dr. Wang's opinions would not be exhibited. AR at 2. Dr. Wang's opinions, however, can be found in the AR of this case. *Id*. at 40-57. Unlike other medical evidence, though, Dr. Wang's opinions are not exhibited in the sense that they have been assigned an exhibit number, but, instead, placed in that part of the AR concerning "Documents Related to Administrative Process Including Transcript of Oral Hearing, if applicable." *See* Dkt. No. 16-3. Nonetheless, as far as this Court is concerned, Dr. Wang's opinions are part of the certified transcript of record in this case. As a result, the Court may remand this case to the ALJ pursuant to Sentence Four of Section 405(g) of Title 42. *See* 42 U.S.C. § 405(g) (providing that a court "shall have the power to enter, upon the pleadings and *transcript of the record*, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.") (emphasis added). This Court, thus, disagrees with at least one district court in this Circuit that has addressed an issue similar to the one here as a Sentence Six matter. *See Celia C. v. Berryhill*, 2018 WL 6524281, at *2 & n.4 (C.D. Cal. Dec. 12, 2018) (noting that the Appeals Council "did not consider and exhibit" additional evidence and the evidence was before the court as part of the record of administrative proceedings, rather than as medical evidence exhibits, and stating that the Appeals Council did not make the evidence part of the administrative record and, thus, it would be addressed under Sentence Six); *but cf. Naomi A. v. Berryhill*, 2018 WL 5099680, at *3 & n.4 (C.D. Cal. Oct. 18, 2018) (noting that the Appeals Council "did not consider and exhibit" additional evidence, and finding that, whether or not the court's review fell under Sentence Six or the holding in *Taylor*, remand would be appropriate).

regard might well be moot.   This is because, in remanding for consideration of Dr. Wang's opinions, the ALJ might alter the RFC determination in this case, which may, in turn, alter the jobs (if any) Plaintiff can still perform.   Nonetheless, because the ALJ might not alter the RFC determination, the Court will address this dispute.[8]

The pertinent Program Policy Statement from the Social Security Administration is clear.   When the issue of skills and their transferability must be decided and a finding is made that a claimant has transferable work skills, "the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision."   SSR 82-41, 1982 WL 31389, at *7.   Here, it is undisputed that the ALJ did not identify the acquired work skills that could transfer to other work.   The Acting Commissioner does not contend otherwise.

Instead, the Acting Commissioner makes two arguments as to why the ALJ did not err and/or harmfully err in this regard.   First, the Acting Commissioner argues that the ALJ did all that the pertinent regulation required, and thus, identifying the relevant transferable skills was harmless.   This Court disagrees. The regulation relied upon by the Acting Commissioner, Section 404.1568(d) of Title 20 of the Code of Federal Regulations ("Section 404.1568(d)"), provides that transferability of work skills is "most probable" when (1) the same or lesser degree

_____

[8]So it is clear, nothing in this Order should be construed as this Court finding that the RFC should or should not be altered on remand.

of skill is required, (2) the same or similar tools and machines are used, and (3) the same or similar raw materials, products, processes, or services are involved. 20 C.F.R. § 404.1568(d)(2). According to the Acting Commissioner, the ALJ obtained explanations from the vocational expert who testified in this case on all three of those factors. This is simply inaccurate. The only factor upon which the vocational expert opined, and then only by regurgitating the regulatory language, was the third factor–when the vocational expert stated that the job of cardiac monitor technician was in the "same work fields and the same materials, products, so the type of work and the industry in which it's in are the same as her work as a respiratory therapist." AR at 83. That was the entirety of the vocational expert's discussion of transferability of skills, and it is the only evidence in the record that West had transferable skills. On no level, let alone when considered in light of the pertinent regulatory framework, was that sufficient.[9] Moreover, even if it was sufficient for the ALJ to make a finding that transferability was probable under Section 404.1568(d), SSR 82-41 is clear that, that is not the end of the road for the ALJ. SSR 82-41 transparently states that, "[w]hen a finding is made that a claimant has transferable skills," *i.e.*, when a finding has been made that transferability is probable, "the acquired works skills must be identified…." Here, the ALJ simply

---

[9]The Court further notes that even this remarkably brief discussion of transferability of work skills only pertained to one of the jobs the vocational expert relied upon, cardiac monitor technician. There is no similar discussion for either of the semi-skilled jobs the vocational expert discussed: phlebotomist and first aid attendant. *See* AR at 83-84.

offered no such identification.   The Acting Commissioner's assertion, therefore, that West is imposing an undue amount of "formalism" on an ALJ in identifying her work skills, is a red herring–it is the Acting Commissioner's own Program Policy Statement that requires this "formalism."[10]

The Acting Commissioner's second argument is that the vocational expert also identified unskilled jobs–*i.e.*, jobs not requiring transferability of skills–that a person more limited than West could perform.   The Acting Commissioner asserts that, although the ALJ did not mention these jobs in his decision, the Court can nonetheless consider them in determining whether error by the ALJ was harmless, citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001 (9th Cir. 2006).   The Court disagrees that *Warre* is applicable here, and thus, rejects this argument.

In *Warre*, the Ninth Circuit, *inter alia*, rejected an argument that, by citing to a manual upon which an ALJ had not cited, the Circuit was supplying a post-hoc rationalization for the ALJ's decision.   *Id*. at 1005 n.3.   The Circuit explained that the manual had been cited by a medical expert at a hearing, and the ALJ "clearly credited" the expert's use of the manual.   *Id*.   Here, the ALJ did not "clearly credit[]" the vocational expert's discussion of unskilled jobs.   Instead, at the

---

[10]This "formalism" exists for a very good reason.   How a reviewing court can determine whether an ALJ properly found that skills were transferable without identifying those skills is beyond the Court.   *See* SSR 82-41, 1982 WL 31389, at *6 ("It is important that these findings be made at all levels of adjudication to clearly establish the basis for the determination or decision for the claimant and for a reviewing body including a Federal district court.").

hearing, the ALJ's only responses to the vocational expert mentioning various unskilled jobs were: (1) "Do you have another one?"; (2) "Do you have one more?"; and (3) "Okay.   All right."   AR at 86.   Whatever "clearly credited" may mean, the ALJ's responses to the vocational expert's testimony do not exhibit any level of accreditation on this record.   As a result, the Court does not find that the vocational expert's discussion of unskilled jobs, which were not relied upon by the ALJ, renders harmless the error in failing to identify West's transferable skills.   *Cf.* SSR 82-41, 1982 WL 31389, at *1 (explaining that transferability of skills will not be an issue when "a finding of 'not disabled' [is] based on the ability to do unskilled work.").

Therefore, on remand, should the ALJ rely on skilled or semi-skilled jobs to make a finding that West is "not disabled," the ALJ **<u>must</u>** identify in the decision the acquired work skills that are transferable and the specific occupations to which the acquired works skills relate, pursuant to SSR 82-41.

<u>CONCLUSION</u>

To the extent set forth herein, the Acting Commissioner's decision denying West's application for supplemental security income is REVERSED.[11]   This case is

---

[11]The Court's decision in this Order reaches only West's application for supplemental security income because there is simply no evidence in the record (or argument made in West's briefs) that West was disabled, for purposes of her application for disability insurance benefits, on or before her date last insured, which was December 31, 2012.   *See* AR at 23, 24; *see also Morgan v. Sullivan*, 945 F.2d 1079, 1080 (9th Cir. 1991) ("In order to obtain disability benefits, [a claimant]

REMANDED to the Acting Commissioner for further administrative proceedings consistent with this Order.   The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED: January 29, 2019 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

must demonstrate [s]he was disabled prior to [her] last insured date.").   Even Dr. Wang's opinions, which began in July 2014, cover a period long after West's date last insured.   At oral argument before this Court, the undersigned brought up this matter with counsel for West, who stated only that, if this case was remanded, the record would be developed further below. Whether that is the case or not, for purposes of this Court's decision on the current record, there is no basis for the Court to remand the denial of West's application for disability insurance benefits because the Court has been pointed to no error by the ALJ in that regard.